b /F
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 08 2008 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH CABRERA,

               Petitioner,

      - against -

D. ARTUS, Superintendent, Clinton
Correctional Facility,

               Respondent.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
06-CV-2853 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

On May 31, 2006, pro se petitioner Joseph Cabrera ("Petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his conviction by a jury in Kings County, New York for Attempted Murder in the Second Degree. Petitioner's claim, construed liberally, see McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (court should interpret pro se pleadings liberally, to raise the strongest arguments they suggest), is that he was deprived of his right to due process by the prosecution's failure to turn over exculpatory evidence. For the reasons set forth below, the Petition is denied.

## I. BACKGROUND

### A. The Trial

At trial, Kim McKenzie-Eastman ("Eastman") testified that on July 19, 2001, while she was sleeping in her home at 168 Atkins Avenue, she was awakened at around 3:30 AM by the smell of gas. (Tr. at 204-05.) She got out of bed to investigate and noticed that there was smoke and fire coming from her front door. (Id. at 205-06.) After Eastman and her son put the fire out, she went to close the living room window, from which she saw a man on a bike in front of the house with his arm outstretched. (Id. at 206-07.) The man was standing under a street light, and

was wearing a dark orange floppy hat, a t-shirt of the same color, black shorts, white socks and black sneakers. (Id. at 208.) Eastman saw a flash coming from his hand, heard a gunshot, and ran away from the window. (Id. at 207) She then heard several additional shots which hit the outside wall of the house. (Id. at 211.) After the shots ended, Eastman returned to the window where she saw the person on the bike heading down the street. (Id. at 212.) Eastman then called 911 to report the shooting. (Id. at 213-14.) Later, officers arrived and took her in a car to the corner of Pitkin and Shepherd Avenues, where she saw the man who had shot at her house in police custody. (Id. at 214-215.)

Dennis Campbell ("Campbell"), a resident of 200 Atkins Avenue, testified that in the early morning hours of July 19, 2001, he was awakened by three gunshots. (Id. at 180-81.) He got out of bed to look at the window, through which he saw a person on a bike wearing a red shirt and a red fisherman's hat riding down Atkins Avenue and turning onto Pitkin Avenue. (Id. at 181-82.) Campbell then saw the person drop a heavy object on a subway grating, a police car come down the street, and police officers arrest the biker. (Id. at 182, 184.)

Police Officer Brian McIvor ("P.O. McIvor") testified at trial that he was on patrol in the early morning hours of July 19, 2001 near Linwood and Pitkin Avenues when he heard several shots. (Id. at 29-32.) After hearing these shots, P.O McIvor and his partner, Police Officer Glen Estrada ("P.O. Estrada"), drove off in the direction of the shots. (Id. at 32.) As they were driving, McIvor saw a man riding a bike and wearing a red shirt and a red hat. (Id. at 34, 36.) P.O. Estrada testified at trial that as he and McIvor were driving, he heard somebody on the second floor of a house yelling "The guy with the red shirt on the bike." (Id. at 123-25.) P.O. Estrada then told P.O. McIvor what he had heard. (Id. at 126.) The police officers then arrested

2

Petitioner. (Id. at 38, 41, 49.) P.O. McIvor later found a gun on a subway grate (id. at 46) and received seven spent cartridges from a police officer at 168 Atkins Avenue (id. at 50). A police detective testified at trial that the gun found on the subway grate was the source of those seven cartridge casings. (Id. at 277.)

### B. Petitioner's Claim

Ten days after the guilty verdict was handed down (Tr. at 441-42), an article appeared in the New York Daily News about a shooting that occurred several blocks away from the scene of Petitioner's crime. The article described a shooting in which a gunman had shot at the entrance to a housing project and then escaped on a mountain bike. One tenant of the housing complex told a reporter "It's very bad. This is happening every week." (Respondent's Exh. B.)

Petitioner claimed at his sentencing that the case described in this Daily News article was sufficiently similar to his case that there should have been disclosure of "that case or any other related bicycle shootings as maybe similar." (Sentencing Tr. at 3.) The trial judge denied the motion, finding that the shooting described in the Daily News had nothing to do with Petitioner's case, but that if more facts were developed, particularly if the perpetrator of the later shooting were arrested, it could serve as a basis for a motion for a new trial. (Id. at 12.) The trial judge's denial of the motion was affirmed on appeal. People v. Cabrera, 1 A.D.3d 375 (N.Y. App. Div. 2003).

Petitioner now claims that he was deprived of his right to due process by the prosecution's failure to turn over exculpatory evidence relating to the shooting described in the Daily News and to the other bicycle-related shootings alluded to by the tenant quoted in the article who stated that "This is happening every week."

3

## II.  DISCUSSION

Because the state appellate court rejected Petitioner's Brady claim on the merits, see Cabrera, 1 A.D.3d 375, Petitioner can succeed here only if he can demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Pursuant to Brady v. Maryland, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). This materiality standard is not satisfied when there is only a "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial." United States v. Agurs, 426 U.S. 97, 109-10 (1976).

The evidence that Petitioner claims should have been disclosed to him falls far short of satisfying this materiality standard. The relationship between the later crime described in the Daily News and the crime Petitioner was convicted of — that both involved guns and bicycles — is far too tenuous to lead to even a weak inference that the crime Petitioner was accused of committing was actually committed by the perpetrator described in the Daily News article. On the other hand, the evidence tying Petitioner to the crime he was convicted of — eyewitness

4

identification of his unusual outfit and the tracing of the gun he was seen discarding to the crime — was strong. Under these circumstances, the fact that another shooter also used a bicycle as a means of transportation in a crowded metropolitan area would not have tended to exculpate Petitioner. See United States v. Amiel, 95 F.3d 135, 145 (2d Cir. 1996) ("The government has no Brady obligation to communicate preliminary, challenged, or speculative information.") (citations omitted). Because the Appellate Division's decision that Petitioner's Brady claim had no merit was therefore entirely proper, Petitioner's claim must fail.

## III. CONCLUSION

The Petition is DENIED. As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. Pursuant to 28 U.S.C. § 1915(a), in forma pauperis status is denied for the purposes of any appeal. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: September 8, 2008  
Brooklyn, New York

s/Nicholas Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge